# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SAMMIE L. SMITH, JR.,

          Plaintiff,

v.

C.O. SARAH RANSBOTTOM and RANDALL HEPP,

          Defendants.

Case No. 24-CV-944-JPS

**ORDER**

    Plaintiff Sammie L. Smith, Jr., an inmate confined at Columbia Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

    The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

    On August 16, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $0.59. ECF No. 6. Plaintiff paid that fee on September 4, 2024. The Court will grant Plaintiff's motion for leave to proceed without

prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.     **SCREENING THE COMPLAINT**

   2.1     **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

During the relevant time period, Plaintiff was an inmate at Waupun Correctional Institution ("WCI") where Defendant Sarah Ransbottom ("Ransbottom") was a correctional officer. ECF No. 1 at 2–3. In November 2022, Ransbottom masturbated and performed oral sex on Plaintiff while he was housed in cell K-36. *Id.* at 3. Ransbottom manipulated Plaintiff into allowing these actions so that Plaintiff would supply her with drugs to support her habits. *Id.* One night, Ransbottom came to Plaintiff's cell at 9:15 p.m. after the count was cleared and the lights were turned off. *Id.* at 3–4. Ransbottom then told Plaintiff that it was okay to do it. *Id.* at 4. Plaintiff then stood on top of the footlocker and stuck his penis out the cell bars. *Id.* Ransbottom then grabbed his penis with her right hand and masturbated Plaintiff for nearly two minutes and then performed oral sex on him for another three to five minutes. *Id.* Ransbottom said she would see him later and left. *Id.* Plaintiff maintains that Ransbottom was abusing her authority as a correctional officer to manipulate Plaintiff into doing what she wanted. *Id.*

The first conversation Plaintiff had with Ransbottom on this subject was a "meet and greet" because Plaintiff has previously heard of her. *Id.* at 5. Ransbottom is the sister of Plaintiff's ex-girlfriend, Kelli. *Id.* Plaintiff learned that Ransbottom and Kelli did not get along well. *Id.* Plaintiff also learned that Ransbottom loves to use drugs. Ransbottom made advances to

Plaintiff and told him that she needed a "a plug." Plaintiff was very interested in this because WCI was known to be an environment loaded with major contraband (cell phones and every street drug of your choice). *Id.* Plaintiff had his own cell phone at that time. *Id.* Plaintiff showed Ransbottom his phone while they were talking. *Id.* at 6. Ransbottom asked for Kelli's new cell number. *Id.* Ransbottom told Plaintiff that Kelli was on Facebook with her female lover. *Id.* Plaintiff told Ransbottom that he would supply her with meth and that concluded their first conversation. *Id.*

At their second conversation, Ransbottom stopped at Plaintiff's cell shortly before the 9:00 p.m. count. Plaintiff told Ransbottom that he would have the meth for her the next time he saw her. *Id.* Plaintiff and Ransbottom were at odds with each other about how the big transactions would go over. Plaintiff wanted Ransbottom to bring phones and ounces of drugs because it was the norm in WCI. *Id.* Ransbottom was okay with this, but she was more concerned about herself. *Id.* Plaintiff wanted Ransbottom to drive to Milwaukee to go pick up the orders whereas Ransbottom wanted to get the drugs directly out of Plaintiff's hands. *Id.* at 6–7. Ransbottom made it clear that she did not want to trust any of Plaintiff's connections. *Id.* Plaintiff told Ransbottom that he would give her the drugs and not to worry. *Id.*

Ransbottom returned to Plaintiff's cell after count cleared at approximately 9:15 p.m. Ransbottom signaled that it was okay to do it and Plaintiff stood on top of the footlocker and stuck his penis out the cell bars. *Id.* Ransbottom grabbed his penis with her right hand and masturbated Plaintiff for nearly two minutes and then performed oral sex on him for another three to five minutes. *Id.* Ransbottom said she would see him later and left. *Id.*

Approximately a week later, Plaintiff and Ransbottom had a third conversation. Plaintiff had in his possession some Percocet pills, weed, K-2 paper, and one gram of meth for Ransbottom. *Id.* Ransbottom was unhappy with the amount of meth; Plaintiff told her he could not get a whole ounce unless she drove to Milwaukee. *Id.* Ransbottom was also upset that Plaintiff still wanted to date Kelli. *Id.* at 8. Plaintiff and Ransbottom agreed on a pact that this situation was between the two of them. *Id.* Although Plaintiff expected Ransbottom to come to his cell again, she never did. *Id.* Plaintiff did not see Ransbottom until almost Christmas 2022. *Id.* Plaintiff believes this was because Ransbottom had gone to WCI administration to alert them that she knew Plaintiff. *Id.* Another inmate told Plaintiff that Ransbottom had gone to the administration. *Id.* Plaintiff felt blindsided by Ransbottom because she had initiated the whole ordeal to supply her drug habit. *Id.*

When Plaintiff finally saw Ransbottom again, he told her that he would supply her with more meth when she came back to his cell. *Id.* Ransbottom said okay but Plaintiff later learned that she went to WCI administration again to report that she saw him. *Id.* WCI then subjected Plaintiff to retaliation by not allowing him to work and not allowing him to leave his cell. *Id.* at 8–9. Plaintiff filed an inmate complaint not to expose Ransbottom but to get out of his cell. *Id.* at 9. Plaintiff later learned that Ransbottom was retaliating against him because she was upset with Plaintiff over his bad drug deals. *Id.* Plaintiff initially stayed quiet about the sexual encounter so as not to be labeled a snitch. *Id.*

### 2.3 Analysis

The Court finds that Plaintiff can proceed against Ransbottom on an Eighth Amendment deliberate indifference claim. To establish that a prison official's conduct violated the Eighth Amendment in this scenario, a

Page 5 of 11
Case 2:24-cv-00944-JPS    Filed 10/22/24    Page 5 of 11    Document 7

plaintiff must show that the official acted with deliberate indifference to an excessive risk to the plaintiff's health or safety. *J.K.J. v. Polk County*, 960 F.3d 367, 376 (7th Cir. 2020) (sexual assaults that correctional officer committed against incarcerated individuals imposed serious risk to their safety, and officer knew of the danger) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). Allegations that a prison official used "her employment to 'coerce [a plaintiff] to have a sexual relationship with her against his will implicates his rights under the Eighth Amendment.'" *Grant v. Van Rybroek*, No. 23-CV-1517-PP, 2024 WL 23421, at *2 (E.D. Wis. Jan. 2, 2024) (quoting *Jones v. Heidt*, No. 23-CV-121-PP, 2023 WL 3984580, at *2 (E.D. Wis. June 13, 2023)).

Here, Plaintiff states an Eighth Amendment claim against Ransbottom. Plaintiff alleges that Ransbottom abused her authority as a prison official to manipulate Plaintiff into having sexual contact with him on numerous occasions. Although Plaintiff does not say that the relationship took place against his will, the Court infers from Plaintiff's allegations of abuse and manipulation that he did not willingly participate in the sexual conduct. *See id.* As such, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Ransbottom.

The Court will not, however, allow Plaintiff to proceed against Hepp. Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir. 2010). Only a defendant who is personally responsible for depriving the plaintiff

of a constitutional right may be held liable under § 1983. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). A supervisor may be held liable under § 1983 if he or she "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what they might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Here, Plaintiff does not make any allegations regarding Hepp. Importantly, Plaintiff does not allege that Hepp was aware of Ransbottom's actions at any time. As such, the Court finds that Plaintiff fails to state a claim against Hepp and will dismiss him from this action.

Finally, the Court finds that Plaintiff may not proceed on a First Amendment retaliation claim. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). The Seventh Circuit has instructed that the proper question in determining whether speech is protected is whether the prisoner "'engaged in [the] speech in a manner consistent with legitimate penological interests.'" *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010). The Seventh Circuit has found that speech is not protected where it is disruptive, confrontational, or something that violates prison disciplinary policies such as "back talk." *Id.* (quotations omitted).

Here, Plaintiff generally alleges that Ransbottom's actions were done in retaliation against Plaintiff. However, it is not clear to the Court what the alleged protected activity is in this instance that caused the retaliation. While filing an inmate grievance is certainly a protected activity, the

allegations do not suggest that any of the alleged retaliatory acts occurred after or as a result of Plaintiff's inmate complaint. As such, the Court does not find that Plaintiff's allegations state a First Amendment claim. Plaintiff may amend his complaint at a later date if he wishes to pursue this claim.

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate indifference claim against Ransbottom.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendant should take note that, within forty-five (45) days of service of this Order, she is to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Hepp be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted

to the Wisconsin Department of Justice for service on Defendant **Ransbottom**;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendant shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendant raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendant contemplates a motion to dismiss, the parties must meet and confer before the motion is filed. Defendant should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendant files a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $349.41 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 22nd day of October, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.